UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : **CRIMINAL COMPLAINT** |
| | : |
| v. | : Hon. Leda Dunn Wettre |
| | : |
| WILLIAM RANDOLPH HIRES, | : Mag. No. 25-13053 |
| a/k/a "Randy Hires" | : |
| | : **FILED UNDER SEAL** |

I, Daniel Rosenblum, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## SEE ATTACHMENT A

I further state that I am a Special Agent with the U.S. Environmental Protection Agency, Criminal Investigation Division, and that this Complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

*/s/ Daniel Rosenblum*
_____
Daniel Rosenblum, Special Agent
U.S. Environmental Protection Agency,
Criminal Investigation Division

Special Agent Rosenblum attested to this Affidavit
by telephone pursuant to F.R.C.P. 4.1(b)(2)(A).

February 13, 2025 at
Newark, New Jersey

*/s/ Leda Dunn Wettre*
HONORABLE LEDA DUNN WETTRE          _____
UNITED STATES MAGISTRATE JUDGE      Signature of Judicial Officer

## ATTACHMENT A

### (Violation of the American Innovation and Manufacturing Act)

From on or about April 25, 2023, to on or about May 11, 2023, in the District of New Jersey and elsewhere, defendant

### WILLIAM RANDOLPH HIRES, a/k/a "Randy Hires,"

did knowingly violate and cause to be violated a requirement and prohibition relating to regulated substances, by causing to be imported into the United States, a regulated substance, to wit: 500 containers of regulated hydrofluorocarbons, without holding and possessing the required allowances for the production and consumption of the hydrofluorocarbons.

In violation of Title 42, United States Code, Sections 7675 and 7413, and 18 United States Code, Section 2.

## ATTACHMENT B

I, Daniel Rosenblum, a Special Agent with the U.S. Environmental Protection Agency Criminal Investigation Division ("EPA-CID"), having conducted an investigation and having discussed this matter with other law enforcement officers who have participated in this investigation, have knowledge of the following facts. Because this Complaint is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause. Unless specifically indicated, all dates described in this affidavit are approximate and all conversations and statements described in this affidavit are related in substance and in part.

### The Defendant and
### the HIRES Importing Company

1.    At all times relevant to this Complaint:

        a.    Defendant William Randolph Hires, a/k/a "Randy Hires" ("HIRES"), was a resident of Woodstock, Georgia, who: (i) founded, owned, and served as the Chief Executive Officer ("CEO") of a company based in Woodstock, Georgia, that specialized in servicing commercial, industrial, and residential air conditioning and heating units (the "U.S. HIRES Company"); and (ii) formed an affiliated company based in Lima, Peru where he also had a residence (the "Peruvian HIRES Company") (together, the "HIRES Importing Company").

        b.    The U.S. HIRES Company advertised itself as leading the United States market in its region, and listed associated business addresses in Georgia and, internationally, in Lima, Peru.

### Background on the American Innovation and Manufacturing Act and
### Regulated Hydrofluorocarbons

2.    The American Innovation and Manufacturing Act of 2020 (the "AIM Act"), 42 U.S.C. § 7675, provides the U.S. Environmental Protection Agency (the "EPA") with authority to regulate hydrofluorocarbons ("HFCs"). HFCs are greenhouse gases with global warming potentials that can be hundreds or thousands of times more potent than carbon dioxide and are used in applications such as air conditioning, refrigeration, fire suppression, solvents, foam blowing agents, and aerosols. Specifically, the AIM Act requires the EPA to phase down the production and consumption of HFCs in the United States by 85 percent in a stepwise manner by 2036 through an allowance allocation and trading program.

3.    As part of the AIM Act, Congress directed the EPA to devise a schedule and promulgate rules and regulations to phase down the production and consumption of HFCs. Congress made the AIM Act and rules or regulations

3

promulgated thereunder enforceable under Section 7413 of the Clean Air Act as if they had been expressly included in Subchapter VI of the Clean Air Act (42 U.S.C. § 7671 *et seq.*). *See* 42 U.S.C. § 7675(k)(1)(C). In turn, Section 7413 of the Clean Air Act provides criminal penalties for knowing violations of Subchapter VI. 42 U.S.C. § 7413(c)(1).

4.    The HFC Allocation Rule (40 C.F.R. Part 84 (the "Allocation Rule")) implements the allowance and trading program by prohibiting any person from importing HFCs without an allowance issued by the EPA. Specifically, the Allocation Rule prohibits, starting on January 1, 2022, any person from importing "bulk regulated substances, either as a single component or a multicomponent substance," except "[i]f the importer of record possesses . . . and expends at the time of ship berthing for vessel arrivals, . . . consumption or application-specific allowances in a quantity equal to the exchange-value weighted equivalent of the regulated substances imported. . . ." 40 C.F.R. § 84.5(b). "Bulk" is defined, in part, as "a regulated substance of any amount that is in a container for the transportation or storage of that substance such as cylinders, drums, ISO tanks, and small cans." 40 C.F.R. § 84.3.

5.    The AIM Act specifically identifies the HFC compounds HFC-32 and HFC-125 as regulated substances. 42 U.S.C. § 7675(c)(1). Likewise, Appendix A of the Allocation Rule lists the substances regulated by the AIM Act and includes the HFC compounds HFC-32 and HFC-125. 40 C.F.R. Part 84, App. A.

6.    The refrigerant R-410A, which is often used in air conditioning and heat pump applications, is typically sold under, and often referred to as, the brand name "Freon" and is comprised of HFC-32 and HFC-125. Accordingly, R-410A (sold under the name Freon) is a regulated substance under the AIM Act and the Allocation Rule.

### The HIRES Importing Company is Put on Notice that it Cannot Lawfully Import HFCs Without Consumption Allowances[1]

7.    In or around April 2022, HIRES purchased approximately 500 containers of HFCs in Peru for use in the United States (the "HFC Shipment"). Beginning at or about that time and continuing over the course of the next several months, the HIRES Importing Company's employees contacted the EPA's Stratospheric Protection Division ("SPD") on multiple occasions, explaining that the company had HFCs in Peru that it wanted to import into the United States and asking about the requirements for importing the HFC Shipment into the United States. During these communications, the SPD staff repeatedly explained to the HIRES Importing Company's employees that companies cannot lawfully import

---

[1] Law enforcement lawfully obtained the email communications referenced in this affidavit.

regulated HFCs into the United States without EPA-issued consumption allowances.

8. For example, on or about June 8, 2022, an SPD official emailed one of HIRES's employees ("Employee-1") that: (a) allowances are required to import HFCs; (b) EPA had already allocated all available allowances for 2022 and 2023 to other companies; and (c) the HIRES Importing Company could only lawfully import HFCs if it was able to purchase HFCs from a company that is an existing allowance holder. The SPD official also wrote:

> **At this point in time, if you or your company wish to import bulk HFCs, you will need to receive a transfer of consumption allowances from an existing allowance holder.** Entities may be able to request a transfer of/purchase consumption allowances that were allocated from the general pool in order to directly import.
>
> To do this, you would have to reach out to a consumption-allowance holder. . . .
>
> If you can find a company that is willing to transfer or sell allowances to you, the transferring company must submit the appropriate reporting form (you yourself must register as well with our HFC reporting system), and the form should be submitted through the HFC reporting system. EPA must issue a non-objection notice prior to the transfer proceeding. . . .

(Emphasis added.) In the same email, the EPA SPD representative provided a link to a list of the companies that held consumption allowances.

9. In or around July 2022, Employee-1 exchanged emails with representatives of a number of other companies to purchase allowances from them but was unsuccessful. In subsequent communications with EPA, Employee-1 told SPD employees that the HIRES Importing Company was unable to purchase consumption allowances and asked how the HIRES Importing Company could still import the 500 containers of HFCs in Peru to the United States without consumption allowances. By email, the SPD employee responded that "it is not possible to import bulk HFCs without consumption allowances." SPD employees reiterated that same information to Employee-1 and another HIRES employee ("Employee-2") at a subsequent virtual meeting held via videoconference.

10. Around this same time, in email correspondence HIRES had with an official at a bank in Woodstock, Georgia, HIRES explained that he was saving money by purchasing the HFC Shipment in Peru instead of the United States. Specifically, in an email sent to the bank on or about July 15, 2022, HIRES stated that: "I have 500 drums a [sic] Freon coming right now . . . about $650 . . . [per]

5

drum in the US alone that's [$]250,000 savings I've already paid for it and it's getting ready to ship out. . . ."

11.    On or about July 20, 2022, in another email to the same bank official, HIRES stated:

> I can show you the number on the flex alone is staggering at the amount of money I'm going to be saving. **I have 500 jugs of Freon Shipping from Peru [i.e., the HFC Shipment] that alone is going to [save] $250,000.** What's shipping and everything it's $125 a drum and right now we're paying $600 to 700 drum.

(Emphasis added.)

### HIRES Knows that He Cannot Lawfully Import the HFCs

12.    On several occasions, Employee-1 and Employee-2 each informed HIRES that the EPA had informed them that it was unlawful to import the HFC Shipment from Peru into the United States without EPA-issued allowances. Employee-1 and Employee-2 also informed HIRES via email that the HIRES Importing Company was unable to obtain the required allowances which might have otherwise permitted it to lawfully import the HFC Shipment.

13.    For example:

a.    On or about July 14, 2022, Employee-1 sent an email to HIRES and other HIRES Importing Company employees reporting that Employee-1 had spoken to the EPA and explaining that the HIRES Importing Company needed to purchase consumption allowances. In the email, Employee-1 stated as follows:

> [A]lthough we have everything ready here in Peru, we still need to do the paperwork there in the USA. For which today, [another HIRES Importing Company employee] and I had a meeting via Teams with EPA (Environmental Protection Agency) agents who told us that they are no longer issuing certificates, but we can get the consumption allowances through companies that already have it, we must pay for those rights.
>
> EPA provided me with a list of contacts, I have been trying to contact some of them today but have not an answer yet.

b.      On or about July 25, 2022, Employee-2 emailed HIRES and other employees indicating that they had been unable to find another company that would sell the HIRES Importing Company an allowance, stating: "Boss [i.e., HIRES], We need assistance if possible, in [sic] get info on what other companies could set [sic] allowances.  EPA provided us with a list of them but they are currently not available or selling their allowances. . . ."

c.      On or about July 25, 2022, Employee-1 emailed HIRES and other employees that the allowances were necessary to import the HFCs to the United States, stating: **"These allowances are the most important step, without those, [the HIRES Importing Company] cannot receive the refrigerants"** in the United States. (Emphasis added.) Employee-1 sent an update email the next day, on or about July 26, 2022, reporting Employee-1's inability to find a company that would sell allowances to the HIRES Importing Company, stating: [T]his is important . . . . until now I cannot find a company that can provide us those allowances, I am worried about that[.]"

d.      On or about July 28, 2022, HIRES received a forwarded email from the EPA explaining in detail that companies cannot import bulk HFCs without EPA-issued allowances, including R-410A, which was the same HFC that the HIRES Importing Company was seeking to import in the HFC Shipment:

> **Companies cannot import certain bulk hydrofluorocarbon (HFC) gases without EPA-issued allowances. The HFC you listed (R-410A) is a regulated substance. So if you do not have allowances, you cannot import those bulk HFC refrigerants.**
>
> Late last year, EPA finalized a rule that creates an HFC phasedown program. . . . Companies have been issued "allowances" that allow them to import bulk HFCs; the window to apply for allowances for 2022 and 2023 has closed. **Again, if you do not have allowances, you can't import bulk HFC refrigerants.** . . . You could, however, purchase bulk HFCs domestically without needing to acquire and expend allowances. You could also purchase allowances from existing allowance holders.

(Emphasis added.)

e.      In the same email exchange, Employee-1 again told HIRES that his company lacked required consumption allowances and thus could not lawfully import HFCs.

14.     On or about July 27, 2022, and July 29, 2022, HIRES emailed certain of his employees and acknowledged the problem with importing the HFC Shipment into the United States.  In one such email, sent on or about July 29, 2022, HIRES wrote that if he did "not get positive feedback today" about importing the HFC

Shipment into the United States, he would resell it to his original suppliers at a loss.

15.     On or about August 10, 2022, after having a videoconference with the EPA, Employee-2 emailed HIRES and other employees at the HIRES Importing Company to again report that: allowances are required to lawfully import the HFC Shipment; shipping the HFC Shipment without the allowances would violate import laws; and the only lawful option for the HIRES Importing Company was to sell the HFC Shipment in Peru instead of shipping it the United States. Specifically, among other things, Employee-2 wrote to HIRES and the others:

- "I asked if the procedure of having allowances would vary or change anytime soon and they told me that it won't change for the year of 2022 neither 2023. . . ."

- "So, as of right now, the only thing to do is resell what we have in Peru."

- "Sorry to be the bearer of the not so good news, but since EPA changes [sic] their regulations recently. It is out of our hands."

## HIRES Decides to Unlawfully Import the HFC Shipment into the United States

16.     Even though HIRES knew that he could not legally import the HFC Shipment into the United States, he nonetheless instructed his employees to import the HFC Shipment into the United States and not to communicate further with EPA regarding the HFC Shipment.

17.     For example:

a.     On or about July 28, 2022, in response to receiving the various emails described above, HIRES replied via email to Employee-1 as follows:

> Yeah you have to be careful what agencies you're reaching out to because the EPA that's for people like us that are in the industry that used the Freon the people that transport it they don't need that and **we don't wanna get on the radar with them [at the EPA] because they can create a hassle and they can hold our stuff up in customs there[.]**

(Emphasis added.)

b.     On or about August 6, 2022, HIRES informed Employee-1, via email, that Employee-1 should "have our . . . broker in Peru to get the Freon [i.e., the HFC Shipment] out to sea[.]"

8

c.      On or about August 10, 2022, HIRES sent an email directing Employee-1, Employee-2 and other HIRES Importing Company employees to "[g]et the Freon [i.e., the HFC Shipment] in a container through the broker here and get it out to sea to Savannah [Georgia] port authority," and "make that happen right away." In a subsequent email to the same employees sent on or about the same day, HIRES repeated the following instructions:

> [G]et [the HFC Shipment] on the ship and get it out to sea. . . . don't care what it takes to get it out to see [sic] find somebody's gonna take it shipping companies just want your money I'll give him my money get it loaded on the container and get it out. . . keep me posted today on what's going on[.]

d.      On or about August 17, 2022, several days after Employee-2 reported on the videoconference with the EPA, discussed above, HIRES directed Employee-1 and 2 via email: "Do not call the EPA please do not."

e.      On or about that same date, HIRES sent two additional emails to Employee-1, Employee-2, and other HIRES Importing Company employees, stating his position that "this is [sic] been dragging on for four months I'm not happy about it," and that the United States and the United Kingdom were the only countries "that are monitoring."

f.      On or about March 13, 2023, HIRES emailed HIRES Importing Company employees stating that Employee-2 was being terminated and that HIRES would personally "see to it" that the HFCs are shipped from Peru.

### HIRES Uses the HIRES Importing Company To Ship HFCs to the United States

19.      On or about April 25, 2023, the HIRES Importing Company shipped the HFC Shipment to the United States. On or about May 11, 2023, that HCF Shipment arrived at the Port of Elizabeth, New Jersey.

20.      Shipping paperwork accompanying the above-described shipment indicates that the shipment contained "500 BOXES LOADED IN 10 PALLETS" of a liquified gas, 410A, and that it was specifically, a "Mixed Refrigerant (R125+R32)." The documentation further lists both the consignee and party to notify as the U.S. HIRES Company along with an address in Adrian, Georgia. The documentation further lists the shipper as the Peruvian HIRES Company—the corporate affiliate of the U.S. HIRES Company based in Peru— along with email addresses for HIRES and the U.S. HIRES Company as the contact information for the HFC Shipment. In addition, the invoice and packing list were contained on forms from the Peruvian HIRES Company which identified the recipient of the HFC Shipment as the U.S. HIRES Company and the contact as HIRES.

9

21.     Similarly, United States Customs and Border Patrol ("CBP") entry documentation for this shipment reflects the "Ultimate Consignee Name" and "Importer of Record Name" as the U.S. HIRES Importing Company and its address in Woodstock, Georgia.

22.     On or about June 12, 2023, law enforcement visited the CBP warehouse containing the HFC Shipment and field screened ten sample containers, each of which contained HFCs (specially, Freon (i.e., the refrigerant R-410A): HFC-32 (difluoromethane) and HFC-125 (pentafluoroethane).

23.     Three samples were sent for laboratory testing, which likewise confirmed that all three samples contained the components of Freon: HFC-32 and HFC-125.

24.     During the relevant time-period, neither HIRES, the HIRES Importing Company, nor any of the HIRES Importing Company's employees possessed any required allowances to legally import HFCs.

25.     On or about June 7, 2023, after being informed that CBP had detained the HFC Shipment at the request of the EPA, HIRES emailed a CBP official and an EPA official falsely claiming, among other things, that: (a) there was "some confusion" about the shipment; (b) he "checked before doing this to make sure there's no problems or issues coming into the US"; and (c) R-410A is "totally environmental friendly" and has "no bad effect on environment."

10